UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JOSHUA SOSA,
    a/k/a "Sos,"
    a/k/a "Sos the Ghost,"

                      Defendant.

Index. No. 17 Cr. 580 (NRB)

---

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT JOSHUA SOSA'S MOTION TO SUPPRESS

Rita M. Glavin
Andrew S. Jacobson
One Battery Park Plaza
New York, New York 10004
Tel: (212) 574-1200
Fax: (212) 480-8421
*Attorneys for Defendant Joshua Sosa*

## TABLE OF CONTENTS

                                    **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

    A.     The Victim's Identification of Mr. Sosa ................................................................ 2

    B.     The Renter's Identification of Mr. Sosa ............................................................... 4

ARGUMENT .................................................................................................................................. 5

CONCLUSION ............................................................................................................................... 8

## TABLE OF AUTHORITIES

Page

Cases

Abdur Raheem v. Kelly,
　257 F.3d 122 (2d Cir. 2001) .................................................................................... 5, 6

Brisco v. Ercole,
　565 F.3d 80 (2d Cir. 2009) ......................................................................................... 5

Manson v. Brathwaite,
　432 U.S. 98 (1977) ..................................................................................................... 5

Mysholowsky v. New York,
　535 F.2d 194 (2d Cir. 1976) ....................................................................................... 5

Neil v. Biggers,
　409 U.S. 188 (1972) ................................................................................................... 6

United States ex rel. John v. Casscles,
　489 F.2d 20 (2d Cir. 1973) ......................................................................................... 6

United States v. Keith,
　183 F. Supp. 3d 427 (S.D.N.Y. 2016) ........................................................................ 6

United States v. Lumpkin,
　192 F.3d 280 (2d Cir. 1999) ....................................................................................... 5

United States v. Perez,
　No. 01 Cr. 848 (SWK), 2003 U.S. Dist. LEXIS 2666 (S.D.N.Y. Feb. 27, 2003) ................. 5, 6

United States v. Reed,
　No. 11 Cr. 487 (RJS), 2012 U.S. Dist. LEXIS 79552 (S.D.N.Y. June 5, 2012) ................ 5, 6, 7

Wiggins v. Greiner,
　132 F. App'x 861 (2d Cir. 2005) ............................................................................ 5, 6

Statutory Authorities

18 U.S.C. § 922(g)(1) ........................................................................................................ 2

18 U.S.C. § 924(c)(1)(A) .................................................................................................. 2

**PRELIMINARY STATEMENT**

Defendant Joshua Sosa respectfully submits this memorandum of law, together with the Exhibits attached to the Affidavit of Rita M. Glavin, in support of his motion to suppress evidence obtained from unduly suggestive pre-trial identification procedures that the New York City Police Department ("NYPD") used with (1) the victim of an alleged drive-by shooting ("Victim") that occurred on the morning of July 21, 2017 in East Harlem, New York, and (2) an individual who rented a white car ("Renter") that was allegedly associated with the shooting. Specifically, the NYPD, while under no time or exigency constraints, showed both the Victim and the Renter a single NYPD mugshot of Mr. Sosa, after which they each identified Mr. Sosa.

The Government alleges that Mr. Sosa conducted a drive-by shooting of the Victim at approximately 10:45 a.m. on the morning of July 21, 2017. The Victim was initially interviewed by police within a half hour after the shooting and was unable to identify Mr. Sosa as the shooter. The NYPD report of this interview stated that the Victim said the shooter was an "unknown Hispanic male driver." Despite the Victim's initial failure to identify the perpetrator, the NYPD showed the Victim a single photograph of Mr. Sosa later that evening, from which the Victim identified Mr. Sosa as the shooter.

As for the Renter, the NYPD interviewed him at the NYPD's 25th precinct on the evening of July 21, 2017 and, after initially stating that the white car he rented had been stolen on July 19, the Renter purportedly changed his story, stating that he rented the car for "Sos." At some point during this interview, the Renter was shown a mugshot photograph of Mr. Sosa on a NYPD computer, and the Renter identified him as the person for whom he purportedly rented the car.

Single photograph identification procedures are routinely condemned as unduly suggestive in the Second Circuit because they often taint the reliability of a witness's

1

identification in and out-of-court.  This is particularly true here, where the Victim failed to identify Mr. Sosa as the alleged shooter when initially interviewed by police shortly after the shooting.  Further, with respect to the both the Victim and the Renter, police had plenty of time without any exigency to perform a constitutionally proper identification procedure, but neglected to do so.  Accordingly, any evidence obtained as a result of the unduly suggestive pre-trial identification procedures used with both the Victim and the Renter should be suppressed, including any in-court identification.

## STATEMENT OF FACTS

The Government commenced this criminal prosecution by Complaint dated July 25, 2017, in which it charged Mr. Sosa with one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  Ex. 1.  The USAO subsequently indicted Mr. Sosa on September 21, 2017, charging him with one count of possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) and one count of knowingly using and carrying, possessing, brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and (iii).

A.       **The Victim's Identification of Mr. Sosa**

According to the Criminal Complaint, at approximately 10:45 a.m. on July 21, 2017, the Victim was walking westbound on East 124th Street toward Second Avenue in Manhattan, New York, when a white car purportedly pulled up beside the Victim and the driver allegedly fired gunshots at the Victim.  Ex. 1.  The shooter then sped away and allegedly crashed the white car into a parked car, whereupon the shooter purportedly left the car and fled on foot.  Id.

NYPD police reports reflect that when police initially spoke to the Victim, which was within a half hour after the shooting, the Victim stated that the shooter was an "*unknown*

Hispanic male driver" of a "*white*" car.  Ex. 2 (emphasis added).  The Victim was transported to Harlem Hospital thereafter, and at approximately 11:30 a.m., the NYPD attempted to speak to him again, but were unable to because the Victim was receiving medical attention.  Ex. 3.

A separate NYPD report states that, at approximately 3:30 p.m. that same day, almost four hours after the shooting:

> [NYPD Officer] Fazio was guarding the [Victim] at the hospital. [Officer Fazio] stated [Victim] was talking and stated that it was a male Hispanic wearing black shorts, white t-shirt, *silver car*. [Victim] told [Officer Fazio] car came up and starting [sic] shooting said it was Sosa from Jefferson.

Ex. 4 at JS_004766 (emphasis added).[1]

The NYPD interviewed the Victim again at Harlem Hospital on July 21, 2017 sometime after 7:00p.m., over four hours following the purported comments heard by Officer Fazio.  A NYPD report entry summarized the meeting as follows: "A single photo of Joshua Sosa was take [sic] to Harlem Hospital by Det Santana and Det Purcell, and the C/V confirmed to them that he was the person who shot him."  Ex. 5.  The photograph used for this identification is attached to the Affidavit as Exhibit 6.

Subsequent to the Victim's July 21, 2017 single photo identification of Mr. Sosa, the NYPD and/or Government met with the Victim on numerous occasions, and the Victim claimed to have known Mr. Sosa for some time prior to the shooting in connection with dealing marijuana and was purportedly involved in a confrontation with him in the week prior to the shooting.  The Victim, who has admitted his involvement in drug trafficking and crimes of violence, is cooperating with the Government to obtain leniency for his crimes.

---

[1] Notably, this officer's purported interactions with the Victim were not inputted into an NYPD report until July 22, the day after the shooting.  Ex. 4 at JS_004765.

3

**B.     The Renter's Identification of Mr. Sosa**

According to the Criminal Complaint, the vehicle used in the drive-by shooting was a rented white car. The NYPD tracked down the Renter who rented the white car and interviewed him at the NYPD's 25th Precinct on July 21, 2017 at around 7:00 p.m. Ex. 5. The NYPD report summarizing that July 21 interview of the Renter provides, in pertinent part:

> [Renter] was on the rental agreement for the [vehicle] that was involved in this crime. He first said, that [t]he car was stolen on Wednesday 7/19/2017 at 1900 hrs on Lexington Ave. Soon after [Renter] changed his story and said, the car was never stolen, and he and 'Sos' a guy he knows his whole life rented the car together. They both went to Budget Rent A Car in Fort Lee, NJ. [Renter] said, he rented the car for 'Sos', and after this Wednesday has not seen the car until we notified him today. A wise search revealed a Joshua Sosa NYSID# . . . and [Renter] identified him as the person he rented the car for, and the person who he went with to rent it.[2]

Ex. 5.

In a January 19, 2018 discovery letter, the Government informed the defense that, at this July 21 interview, "the [Renter] was shown a photograph of the defendant on a computer and identified him as the person for whom he rented the car." The Government further stated that the photograph shown to the Renter was the same photograph shown to the Victim.

Subsequent to the July 21, 2017 single photo identification of Mr. Sosa, the NYPD and/or Government met with the Renter on numerous occasions and he provided more information about himself and Mr. Sosa, including electronic messages he sent to Mr. Sosa at the direction of law enforcement. The Renter, who has admitted his involvement in prior crimes, including drug crimes and tax evasion, is cooperating with the Government to obtain leniency for his crimes.

---

[2] The report further notes that "a single photo of Joshua Sosa was take [sic] to Harlem Hospital by Det Santana and Det Purcell, and the C/V confirmed to them that he was the person who shot him." Ex. 5.

4

**ARGUMENT**

Reliability is the fundamental consideration in determining the admissibility of eyewitness testimony. See, e.g., Wiggins v. Greiner, 132 F. App'x 861, 864 (2d Cir. 2005) ("Supreme Court precedent clearly identifies 'reliability' as the 'linchpin in determining the admissibility of identification testimony.'") (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). In determining the admissibility of a pre-trial out-of-court identification or subsequent in-court identification of the defendant at trial, the court must initially determine whether the pre-trial identification procedure "unduly and unnecessarily suggested that the defendant was the perpetrator." Abdur Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). If the court finds that the identification procedure was unduly suggestive, then it must determine whether the identification itself was "independently reliable." Abdur Raheem, 257 F.3d at 133.

An identification procedure is deemed unduly suggestive where it is based on police procedures that create "a very substantial likelihood of irreparable misidentification." United States v. Reed, No. 11 Cr. 487 (RJS), 2012 U.S. Dist. LEXIS 79552, at *13 (S.D.N.Y. June 5, 2012) (quoting Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009)). It is well-established in the Second Circuit that single photo arrays are considered unduly suggestive identification procedures given the significant likelihood of irreparable misidentification. See, e.g., Wiggins, 132 F. App'x at 865 ("[T]his court has 'consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one.'") (quoting Mysholowsky v. New York, 535 F.2d 194, 197 (2d Cir. 1976)); United States v. Lumpkin, 192 F.3d 280, 288 (2d Cir. 1999); Reed, 2012 U.S. Dist. LEXIS 79552, at *13-14 (holding that single photo arrays of defendant shown to eyewitness were improperly suggestive); United States v. Perez, No. 01 Cr. 848 (SWK), 2003 U.S. Dist. LEXIS 2666, at *12 (S.D.N.Y. Feb. 27, 2003) (holding single photo array to be unduly

suggestive). Single photo arrays are unduly suggestive, because they raise the "necessary suggestion" that the individual depicted in the photograph was the perpetrator. See United States v. Keith, 183 F. Supp. 3d 427, 433 (S.D.N.Y. 2016) (quoting United States ex rel. John v. Casscles, 489 F.2d 20, 25 n.5 (2d Cir. 1973)).

Where a pre-trial identification procedure is deemed unduly suggestive, courts will suppress the out-of-court and in-court identifications if they were not independently reliable, which turns on an assessment of the totality of the circumstances and additional factors identified in Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Wiggins, 132 F. App'x at 864-865; Reed, 2012 U.S. Dist. LEXIS 79552, at *13-14. In Neil v. Biggers, the Supreme Court of the United States identified five factors in assessing the reliability of an unduly suggestive identification procedure: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Abdur Raheem, 257 F.3d at 135 (citing Biggers, 409 U.S. at 199-200). None of these factors by themselves are dispositive – instead, courts will assess the independence of reliability "in light of the totality of the circumstances." Abdur Raheem, 257 F.3d at 135.

The NYPD's identification procedures involved showing both the Victim and the Renter a single mugshot photograph of Mr. Sosa on the evening of July 21, 2017. With respect to the Victim, the NYPD did this many hours after the Victim initially told police the shooter was an "unknown Hispanic male" driving a "white" car, and then later that said it was a "male Hispanic" in a "silver" car. Exs. 2, 4. As for the Renter, the NYPD showed him a photograph of Mr. Sosa on a NYPD computer in the police precinct, and the chronology of precisely what

happened during the Renter's interview that evening, and when the identification occurred, is unclear. The NYPD's cursory summary of that interview is vague, particularly regarding who said what, when, and the length of the interview.

Further, there were no exigent circumstances justifying the use of a single mugshot photograph for the identifications. The NYPD had more than enough time and opportunity to procure additional photographs for an appropriate photo array to present to the Victim and the Renter. Additionally, with respect to the Victim and the identification procedure, the NYPD should have shown the Victim a separate photographic lineup that included the Renter given that he was the person who rented the white car that was allegedly used in the shooting.

The taint from this improper pre-trial identification procedure is too great to permit the admission of the Victim's and Renter's out-of-court and in-court identification of Mr. Sosa. See Reed, 2012 U.S. Dist. LEXIS 79552, at *20 (suppressing all evidence derived from two unduly suggestive identification procedures that were conducted using a single photograph). While the Victim later claimed (after the NYPD's suggestive photo identification on July 21) to have known Mr. Sosa for some time prior to the shooting and to have had a confrontation with him a week prior to the shooting, that cannot erase the taint of the identification that occurred on the evening of July 21, 2017. The Victim failed to identify Mr. Sosa as the shooter when first interviewed by police right after the shooting. And while the Victim allegedly made a comment about "Sosa from Jefferson" several hours later in the hospital, the facts and circumstances of those comments are unclear. Indeed, in those purported comments, the Victim described the car as *silver* instead of *white* (as the Victim first described it), and the NYPD summary of the interaction does not reflect whether the Victim actually stated Mr. Sosa was the shooter. To then

take a single mugshot photograph of Mr. Sosa and present it to the Victim as the shooter hours later that evening, was unduly suggestive.

## CONCLUSION

For the foregoing reasons, Mr. Sosa respectfully requests that the Court (i) suppress any and all evidence obtained from the Victim's and Renter's July 21, 2017 identification of Mr. Sosa as the alleged shooter; and (ii) grant Mr. Sosa such other and further relief that the Court deems just and proper.

New York, New York
May 23, 2018

>
> Respectfully submitted,
>
> SEWARD & KISSEL LLP
>
> By: __/s Rita M. Glavin_____
>     Rita M. Glavin
>     Andrew S. Jacobson
>
> One Battery Park Plaza
> New York, New York 10004
> Tel: (212) 574-1200
> Fax: (212) 480-8421
> *Attorneys for Defendant Joshua Sosa*