UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

              - v. -                             17 Cr. 580 (NRB)

JOSHUA SOSA,
        a/k/a "Sos,"
        a/k/a "Sos the Ghost,"

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York,
Attorney for the United States
of America

Lauren Schorr
Assistant United States Attorney
     - Of Counsel -

The Government respectfully submits this memorandum of law in response to defendant Joshua Sosa's pre-trial motion to suppress eyewitness identification testimony.  The eyewitness identifications were not unnecessarily suggestive, and even if they were, the witnesses' identifications would be independently reliable.  Thus, the motion should be denied.  Because the defendant raises no dispute as to the material facts concerning the question, the Court need not hold a hearing.

## I.      Background

Indictment 17 Cr. 580 (NRB) charges the defendant with using and possessing a firearm, which was brandished and discharged, during and in relation to a drug trafficking crime, namely a conspiracy to distribute marijuana, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii), (ii), and (iii), and 2, and possessing a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1).

These charges arises from a drive-by shooting (the "Shooting") that occurred on or about Friday, July 21, 2017 at approximately 10:45 a.m. in the vicinity of 124th Street between First and Second Avenues in New York, New York.  The evidence includes, among other things, statements by the victim of the Shooting (the "Victim"), an individual who rented the vehicle used in the Shooting (the "Renter"), cellphone evidence, video surveillance, and physical evidence recovered from the scene of the shooting.  The evidence will show that on July 21, at approximately 10:45 a.m., the Victim was walking westbound on 124th Street toward Second Avenue when a white car – a white Ford Fusion (the "White Ford") – pulled up beside the Victim.  The Victim saw the driver of the White Ford and knew the driver as "Sosa." The driver, "Sosa," started firing gunshots at the Victim, hitting the Victim in the arm, chest, and leg.  As

1

"Sosa" tried to speed away in the White Ford, the car crashed into a parked vehicle, and "Sosa" then fled on foot.  The Victim had known "Sosa" for approximately one year, and had an altercation with "Sosa" a few days before the shooting.  On or about July 21, 2017, the date of the shooting, the Victim identified a photograph of the defendant as "Sosa."

The evidence will further show that the White Ford was found at the scene by law enforcement.  There was visible damage to the driver side of the White Ford, and the passenger side of another vehicle, which was close to or in contact with the White Ford.  Approximately five spent .380 shell casings were recovered from the scene of the shooting: one was found inside the White Ford, two were recovered under the White Ford, and two others were recovered behind the White Ford.  Law enforcement recovered a rental agreement from inside the White Ford and learned that the White Ford was rented to the Renter two days before the shooting on or about Wednesday, July 19, 2017.  The Renter has stated, in sum and substance, that he rented the vehicle for an individual known to the Renter as "Sos," at "Sos's" request, on or about Wednesday, July 19.  The Renter rented it in his own name but provided the keys to "Sos," after which "Sos" drove the vehicle from New Jersey (where the vehicle was rented) to New York. The Renter has known "Sos" for several years.  On or about July 21, 2017, the date of the shooting, the Renter identified a photograph of the defendant as "Sos."

The defendant now moves to suppress the identifications of the defendant by the Victim and the Renter.

2

**II.     The Defendant's Motion to Suppress Identification Evidence Should Be Denied**

      **A.     Applicable Law**

    "The Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry* v. *New Hampshire*, 565 U.S. 228, 237 (2012).  Thus eyewitness identifications may be excluded only where "improper police conduct" occurred, and that improper conduct was "'so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* at 238 (quoting *Simmons* v. *United States*, 390 U.S. 377, 384-85 (1968) (alteration omitted)).  Short of that, the "'Draconian sanction'" of exclusion cannot be considered, and identification evidence is for the jury to weigh.  *Id.* at 239 (quoting *Manson* v. *Brathwaite*, 432 U.S. 98, 113 (1977)).

    Federal courts follow a two-step analysis in examining motions to exclude identification evidence.  First, the defendant must show that the identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *United States* v. *DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987) (quoting *Stovall* v. *Denno*, 388 U.S. 293, 302 (1967)).  This is a high threshold to meet, as the defendant must show that, under the totality of the circumstances, there is "'a very substantial likelihood of irreparable misidentification.'" *United States* v. *Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990) (quoting *Simmons*, 390 U.S. at 384).  If the defendant cannot make such a showing, "the trial identification testimony is generally admissible without further inquiry into the reliability of the

3

pretrial identification.  In that circumstance, any question as to the reliability of the witness's identification goes to the weight of the evidence, not its admissibility." *Id.* at 973.

Even if a court does find the identification procedure unnecessarily suggestive, that alone does not result in excluding the identification.  *See Brathwaite*, 432 U.S. at 110-14 (rejecting "per se" approach that would "require[] exclusion of the out of court identification evidence, without regard to reliability, whenever it has been obtained through unnecessarily suggestive confrontation procedures").  Instead, if and only if a court finds that the identification procedure was unnecessarily suggestive, a second determination must be made: whether the identification evidence is nevertheless independently reliable based on the totality of the circumstances.  *See id.* at 114 ("[R]eliability is the linchpin in determining the admissibility of identification testimony."); *United States* v. *Simmons*, 923 F.2d 934, 950 (2d Cir. 1991) ("Even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.").  Similarly, even when a pretrial identification is found to be unduly suggestive, "the law is clear that an eyewitness may nonetheless be allowed to make an in-court identification if the eyewitness has an independently reliable basis upon which to make the identification." *United States* v. *Reed*, No. 11 Cr. 487 (RJS), 2012 WL 2053758, *6 (S.D.N.Y. June 6, 2012) (citing *United States* v. *Lumpkin*, 192 F.3d 280, 288 (2d Cir. 1999)); *see also United States* v. *Salameh*, 152 F.3d 88, 126 (2d Cir. 1998) ("A witness who identified a defendant prior to trial may make an in-court identification of the defendant if . . . the in-court identification is independently reliable, even though the pretrial identification was unduly suggestive.").

4

In determining the admissibility of an in-court identification, the "'central question,' [is] 'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.'" *Brathwaithe*, 432 U.S. at 106 (quoting *Neil* v. *Biggers*, 409 U.S. 188, 199 (1972)).  In assessing the totality of the circumstances, the factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200.  No single factor is dispositive, and the "factors must be assessed in light of the totality of the circumstances." *United States* v. *Concepcion*, 983 F.2d 369, 378 (2d Cir.1992).

Of course, a court need not reach the issue of reliability if it finds that the identification procedure was not unnecessarily suggestive.  *See, e.g.*, *Sims* v. *Sullivan*, 867 F.2d 142, 145 (2d Cir. 1989) ("Because the pretrial procedures in the instant case were not unduly suggestive . . . we need not address the question of the independent reliability of [the] identification . . . ."); *Jarrett* v. *Headley*, 802 F.2d 34, 42 (2d Cir. 1986) ("[I]f the procedures were not impermissibly suggestive, independent reliability is not a constitutionally required condition of admissibility."). Indeed, where there is no "improper police conduct" in the identification procedure, the Due Process Clause does not regulate admissibility, and determinations concerning reliability must be left to the jury.  *Perry*, 565 U.S. at 238-40.

## B.     Relevant Facts

On or about July 21, 2017, at approximately 10:45 a.m., the Victim was shot during a drive-by shooting in the vicinity of 124th Street between First and Second Avenues. Within

5

minutes of the Shooting, the NYPD arrived and transported the Victim to a nearby hospital (the "Hospital").  When NYPD officers first spoke to the Victim when they arrived at the scene of the Shooting, the Victim stated, in sum and substance, that an unknown Hispanic male pulled by aside him in a white vehicle and began to shoot at the Victim.  (Def. Ex. 2.)  At approximately 11:30 a.m., NYPD officers attempted to interview the Victim again at the hospital, but the Victim was still being treated.  (Def. Ex. 3.)  Then, at approximately 3:30 p.m., the Victim spoke to a police officer ("Officer-1") who was present with the Victim at the hospital.  The Victim stated to Officer-1, in sum and substance, that the driver and shooter was driving a silver car, that it was a male Hispanic wearing black shorts and a white shirt and that it was "Sosa" from the Jefferson Houses.  (Def. Ex. 4.)  While still at the Hospital, the Victim later stated that he had known "Sosa" for approximately one year and that they had a physical altercation a few days prior to the shooting.  (Compl. ¶ 3(b).)

Several hours later, at approximately 7:00 p.m., two NYPD detectives ("Detective-1" and "Detective-2") interviewed the Renter at the precinct.  The Renter acknowledged that he rented the White Ford from a rental company in New Jersey on July 19, 2017.  He initially claimed that the vehicle had been stolen that same day, but subsequently stated, in sum and substance, that the vehicle was not stolen, but rather that he had rented it for an individual known to the Renter as "Sos," a man he had known his entire life.  (Def. Ex. 5.)  The Renter further stated, in sum and substance, that he and "Sos" went to a rental company in Fort Lee, New Jersey, and that he rented the vehicle for "Sos."  After July 19, the Renter had not seen the vehicle until he learned of the incident on July 21.  (Def. Ex. 5.)  During the Renter's interview, and after the Renter identified "Sos" as the man for whom the Renter rented the White Ford, Detective-2 ran a search

6

for individuals named "Sos" or "Sosa," which revealed the defendant.  Detective-2 then showed the Renter a photograph of the defendant (the "Photograph," Def. Ex. 6), and the Renter identified the Photograph of the defendant as the person for whom he rented the White Ford. (Def. Ex. 5; Gov't Discovery Letter Mar. 9, 2018.)

Detective-1 and another Detective ("Detective-3") then went to speak to the Victim at the Hospital following the interview of the Renter.  The Detectives showed the Victim the Photograph and the Victim confirmed that the individual in the Photograph – the defendant – was the person who shot him.  (Def. Ex. 5.)  The Victim initialed the Photograph.

**C.      Discussion**

**1.      The Pre-Trial Identifications Were Not Unduly Suggestive**

The defendant argues that the out-of-court identifications by the Victim and the Renter should be suppressed, and both witnesses should be barred from identifying the defendant in court, because the NYPD Detectives described above showed the Renter and the Victim a single photograph of the defendant to make the out-of-court identification.

To be sure, in many circumstances, asking a potential witness to make an identification when viewing only the defendant – whether by using an in-person "show-up" identification or by presenting a single photograph – can be unnecessarily suggestive.  (*See* Def. Mot. 5-6 (collecting cases).)  Here, however, the Detectives did nothing improper by using a single photograph to *confirm* the Victim's and the Renter's *prior* identifications of the defendant, and because the Victim had already identified the defendant as the shooter, and the Renter had already identified the defendant as the individual for whom he rented the White Ford, there was no risk that using a single photograph would be suggestive.

7

The use of such "confirmatory identifications" is commonly upheld by federal courts, and does not constitute the "improper police conduct" needed to establish a basis for exclusion. *See Perry*, 565 U.S. at 238; *see, e.g.*, *Gilbert* v. *Superintendent of Collins Correctional Fac.*, 03 cv. 3866 (LBS), 2004 WL 287683, *8 (S.D.N.Y. Feb. 11, 2004); *Franco* v. *Lee*, 10 cv. 1210 (SJF), 2013 WL 704655, *10 (E.D.N.Y. Feb. 26, 2013); *Stallings* v. *Wood*, 04 cv. 4714 (RCM), 2006 WL 842380, *11 (E.D.N.Y. Mar. 27, 2006) (collecting cases).[1] Courts have upheld single photograph identifications "if used under non-suggestive or exigent circumstances," and each case involving a single photograph identification "must be considered on its own facts." *United States* v *Stanley*, 09 Cr. 141 (NGG), 2009 WL 5066864, at *4 (E.D.N.Y. Dec. 22, 2009) (citing *Simmons*, 390 U.S. at 384, and *Layton* v. *Philips*, 2009 WL 2043640 (2d Cir. July 15, 2009)).

The Victim identified the defendant – "Sosa" from Jefferson – as the perpetrator of the Shooting *before* Detective-1 displayed the defendant's Photograph to the Victim.[2] Similarly, the

---

[1] Federal cases examining confirmatory identifications typically occur in the habeas context, because New York's clear rule permitting confirmatory identifications means that New York law enforcement officers frequently employ such procedures, which New York courts then rule on in the first instance. Federal courts do not, however, uphold the resulting convictions based on the deferential standard applicable to habeas claims, but rather because New York's confirmatory identification rule "'tracks the federal standard that identification procedures violate Due Process only if they yield 'unreliable' identifications.'" *Espinal* v. *Duncan,* 00 cv. 4844 (RWS), 2000 WL 1774960, *3 (S.D.N.Y. Dec. 4, 2000).

[2] In his brief, the defendant emphasizes a police report of the Victim's initial statement – made *minutes* after being shot multiple times – that the shooter and driver was an "unknown" Hispanic male, while he attempts to discount a police report of the Victim's subsequent statement – *before* being shown the Photograph – that the perpetrator and driver of the vehicle was "Sosa" from Jefferson. (Def. Br. 6-7.) The defendant seeks to cast doubt on the Victim's subsequent statement because that statement makes clear that the defendant in fact had personal knowledge of and identified the defendant before being shown the Photograph, refuting the possibility that the single photograph was unnecessarily suggestive. Because the procedure employed was not

Renter identified the defendant – "Sos," an individual he had known for a long time – as the person for whom he rented the White Ford *before* Detective-2 displayed the defendant's Photograph to the Renter.  Because both witnesses identified the defendant, whether as the perpetrator or the driver of the White Ford, prior to making any photograph identifications, showing the witnesses the defendant's Photograph cannot have influenced or suggested to the Victim or the Renter that either should have identified the defendant.  *See Watson* v. *City of N.Y.*, 289 F. Supp. 3d 398, 408-09 (E.D.N.Y. 2018) (finding single photo identification not to be unnecessarily suggestive, where victim identified defendant immediately after incident and claimed to know him previously, such that victim's photo identification was "merely confirming for police" that defendant was the person victim had identified); *see also United States* v. *Ramos-Cruz*, No. 11 Cr. 151, 2014 WL 9931353, at *2 (W.D.N.Y. July 15, 2014) (upholding single photo identification where identification was not one of "an unknown person, [but] rather, it was a confirmatory identification," where witness purchased heroin from defendant in the past); *Gilbert* v. *Superintendent*, 2004 WL 287683 at *8 ("'police suggestiveness does not require suppression of an identification if the witness was not thereby influenced, as, for example, when the witness's identification was already positive'" (quoting *Jarrett* v. *Headley*, 802 F.2d at 41-42).  There is simply no reason to believe that the pretrial identification of the defendant constitutes "improper police conduct" that was "so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *See Perry*, 565 U.S. at 238

---

unduly suggestive, any questions about the reliability of the Victim's identification, including his initial statement to the police, goes to the weight, not admissibility, of the identification and is subject to cross-examination.

(alteration and internal quotation marks omitted); *see also Brathwaite*, 432 U.S. at 113–14; *Biggers*, 409 U.S. at 199-200; *see also United States* v. *Harris*, 12 Cr. 65, 2018 WL 1517216, at *18 (D. Vt. Feb. 27, 2018) (recognizing that courts in this Circuit have "'condemned the exhibition of a single photograph as a suggestive practice,'" but noting that such "condemnation arises from a concern that a single photograph may improperly influence a witness's identification of an unknown perpetrator based solely on the witness's observation of the crime," which does not exist when, for example, a co-conspirator identifies the perpetrator) (quoting *Mysholowsky* v. *New York*, 535 F.3d 194, 197 (2d Cir. 1976)).

Accordingly, because the defendant has failed to make a threshold showing that the pre-trial identification procedures used with the Victim and the Renter were unnecessarily suggestive, the identifications should be admitted at trial, and subject to cross-examination, without a pretrial evidentiary hearing on the issue of their reliability. *See Maldonado-Rivera*, 922 F.2d at 973 (where there has been no showing of suggestiveness, "any question as to the reliability of the [identifications] goes to the weight of the evidence, not its admissibility"); *see also United States* v. *Padilla*, No. S1 94 Cr. 313 (CSH), 1994 WL 681812, at *8 (S.D.N.Y. Dec. 5, 1994) ("In the absence of a sufficient pre-trial showing of impropriety, exploration of the circumstances surrounding the identification procedures may be properly left to cross-examination at trial.").

2.   **The Victim's and the Renter's Identifications of the Defendant Are Independently Reliable**

Even if showing the Victim and the Renter a confirmatory photograph was impermissibly suggestive – which the Government disputes – that would not support exclusion if each witness

had an independent basis to reliably identify the defendant.  *See Simmons*, 923 F.2d at 950.  That rule further explains why federal courts routinely uphold confirmatory identifications: such identifications occur only when the witness has a pre-existing, independent basis for identifying the defendant, as they are merely confirmatory.  For example, in *Wiggins* v. *Greiner*, the Second Circuit did not resolve the question of a confirmatory identification's suggestiveness because the independent basis for the in-court identification was so clear.  132 F. App'x 861, 864-66 (2d Cir. 2005) (dispute as to single photo's suggestiveness "merits little discussion" because "eyewitness had a sufficient independent basis for making a reliable in-court identification"); *Reed*, 2012 WL 2053758, at *6 (S.D.N.Y. June 6, 2012), *aff'd* 570 F. App'x 104, 109-110 (2d Cir. 2014) (upholding decision to admit in-court identification where witness had prior interactions with defendant, rendering identification reliable); *see also, e.g.*, *Burgess* v. *Conway*, 09 cv. 9151 (BSJ) (THK), 2010 WL 6841526, *12-*14 (S.D.N.Y. Oct. 21, 2010), *adopted by* 2011 WL 2638141 (S.D.N.Y. July 5, 2011) (same); *Espinal* v. *Duncan,* 00 cv. 4844, 2000 WL 1774960, *3 (S.D.N.Y. Dec. 4, 2000) (same).

Examining the totality of the circumstances, the Victim clearly has an independent basis for making a reliable identification of the defendant.  The Victim had an opportunity to view the defendant at the time of the Shooting, as the White Ford pulled up beside the Victim in the morning hours of July 21.  Indeed, on the day of the Shooting, just hours later, the Victim described the perpetrator as a male Hispanic wearing black shorts and a white shirt, and identified him by name.  And just hours after that, the Victim identified the photograph of the defendant as the shooter.  Moreover, this is not a circumstance in which a bystander was asked to identify an unknown perpetrator based solely on observations at the time of the crime.  Rather, as

11

set forth in the Complaint, the Victim had previously known the defendant for approximately one year, and in fact, the two had a physical altercation a few days prior to the Shooting, on or about July 18, during which the Victim beat the defendant in a fight in front of the defendant's associates.  (Compl. ¶ 3.)

Similarly, an in-court identification by the Renter would surely have an independent basis for reliability.  The Renter had known the defendant for many years prior to July 2017.  He traveled with the defendant to New Jersey to rent the White Ford just days prior to the Shooting on July 19, and he rented the White Ford for the defendant on that date.  The Renter then drove back to New York from New Jersey with the defendant.  On July 21, the Renter then identified the defendant by name and then identified a photograph of the defendant as the person for whom he rented the White Ford.

For both the Victim's in-court identification and the Renter's in-court identification, the totality of the circumstances demonstrate that those identifications clearly have an independent basis of reliability.  Both had ample opportunity to see the defendant at the time of their respective "confrontations," both expressed certainty with their identifications, both identified the defendant by name, the photo identifications were made within days or hours of their respective confrontations, and significantly, both witnesses had prior interactions with the defendant, in fact that same week as the Shooting.  Courts in this Circuit have found independent bases for in-court identifications based on similar indicia of reliability.  *See, e.g.*, *Lumpkin*, 192 F.3d at 288 (officers' in-court identifications reliable where officers had unobstructed views of the defendant selling narcotics on two occasions, one of which was during daylight at close range); *Wiggins*, 132 F. App'x at 865 (witness saw defendant at distance of 50 feet under "street

12

light illumination," but was also familiar with defendant from seeing him regularly in neighborhood); *United States* v. *Crumble*, 18 Cr. 32 (ARR), 2018 WL 1737642, at \*2 (E.D.N.Y. Apr. 11, 2018) (collecting cases finding that "in-court identification is [] admissible, despite an improper pre-trial identification procedure, if the witness is familiar with the defendant prior to the incident," or alternatively, if "if a witness gets a good look at the defendant during the course of a crime"); *Harris*, 2018 WL 1517216, at \*3 (finding in-court identification to be independently reliable where witness had "sufficient familiarity" with defendant, had an extended interaction with the defendant, and though he could not provide a description, did identify defendant by name); *Reed*, 2012 WL 2053758, at \*5 (noting that a "witness's familiarity with a suspect may establish that the identification . . . is independently reliable"); *Espinel*, 2000 1774960, at \*3. *Cf. United States* v. *Wong,* 40 F.3d 1347, 1360 (2d Cir.1994) (witness who had ducked under table during shooting but observed gunman for two to three seconds could make independently reliable identification).

The defendant's sole argument against any in-court identification is that "[t]he taint from the improper pre-trial identification procedure is too great to permit the admission of the Victim's and Renter's out-of-court and in-court identification" of the defendant.  (Def. Br. at 7). The defendant fails to make any argument refuting the circumstances supporting the independent reliability of the out-of-court or in-court identification.  To the contrary, the defendant acknowledges, without dispute, that the Victim has stated that he knew the defendant for some period of time before the Shooting.  The defendant nonetheless claims – without explanation and without any support in the law – that this past relationship is not sufficient to "erase the taint of

13

the identification that occurred on July 21." (Def. Br. at 7.) And in fact, the defendant simply ignores the past relationship between the Renter and the defendant.

The defendant's unsupported claim of tainted identification does nothing to indicate that the identifications would lack reliability. Of course, if the pretrial identifications had reliable, independent bases – and the defendant has advanced no reason that it would not – then the pretrial identifications would not taint any subsequent identifications. *See, e.g.*, *Manson* v. *Brathwaite*, 432 U.S. at 116 (results of suggestive pretrial identification procedure admissible because nonetheless reliable); *Rodriguez* v. *Portuondo*, 01 cv. 0547 (PAC), 2006 WL 2168314, at *16 (S.D.N.Y. Aug. 1, 2006) (same). And even if the pretrial identifications were somehow unreliable or unduly suggestive, the mere fact of its occurrence would not necessarily taint a later in-court identification. *See United States* v. *Crews*, 445 U.S. 463, 473 (1980) (upholding "courtroom identification" that "rested on an independent recollection of" the witness's "initial encounter with the assailant, uninfluenced by the pretrial identifications"). Indeed, as described above, in cases involving confirmatory identifications, in-court identifications often have independent reliability despite any risk of taint from an earlier identification. *See, e.g.*, *Wiggins*, 132 F. App'x at 865-66 ("there is little reason to think that [a single-photo display], as opposed to the eyewitness's own memory, informed his trial identification"); *Espinal*, 2000 WL 1774960, at *3 ("Santiago's prior acquaintance with Espinal established that the in-court identification was reliable notwithstanding the prior photographic display."). The defendant raises no reason that these pretrial identifications lack reliability or pose a particular risk of tainting the Victim's or the Renter's expected in-court identification.

Accordingly, the defendant's motion to suppress the identifications should be dismissed.

14

### III.    The Defendant's Motion Should Be Denied Without a Hearing.

### A.    Applicable Law

A defendant is not typically entitled to a pretrial hearing regarding the admissibility of identification evidence.  *See Watkins* v. *Sowders*, 449 U.S. 341, 347-49 (1981).  Absent "peculiar problems," the reliability of identification evidence should be evaluated by a jury, as with most evidence.  *Id.*  The Second Circuit thus adheres to the established practice of allowing cross-examination and argument to test the reliability of identification evidence, particularly where (as here) the identifying witness "had seen the defendant in person and in action at approximately the time of the violations charged in the indictment."  *See United States* v. *Baccollo*, 725 F.2d 170, 173 (2d Cir. 1983) (no pretrial proceeding or voir dire required before witnesses made in-court identification).

"A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact."  *United States* v. *Noble*, 07 Cr. 284, 2008 WL 140966, *1 (S.D.N.Y. Jan. 11, 2008) (citing *United States* v. *Dewar*, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007) *and United States* v. *Pena*, 961 F.2d 333, 339 (2d Cir. 1992)); *United States* v. *Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989).  If the moving papers do not create a genuine dispute as to any *material* fact, district courts will decide the motion without a hearing. *See United States* v. *Caming*, 968 F.2d 232, 236 (2d Cir. 1992) (affirming the denial of a suppression hearing where "[t]he defense affidavits did not deny or refute the allegations" in the Government's affidavit), *abrogated on other grounds*, *Peck* v. *United States*, 73 F.3d 1220 (2d Cir. 1995); *United States* v. *Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969).  To establish a disputed issue of material fact, the defendant must typically present affidavits based on personal

15

knowledge of the facts.  *United States* v. *Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) (finding

defense counsel's affidavit submitted in support of a suppression motion insufficient to raise an

issue of material fact); *United States* v. *Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998)

("ordinarily [a factual issue must be] raised by an affidavit of a person with personal knowledge

of the facts;" otherwise "there is no basis for holding an evidentiary hearing or suppressing the

evidence." (citing *Gillette*, 383 F.2d at 848)).

      **B.**    **Discussion**

      Because the defendant has not put any material facts in dispute, his motion should be

denied without a hearing.  In fact, the defendant has not filed an affidavit presenting his personal

knowledge of facts.  The defendant has in no way raised a dispute as to the material facts here,

including the identification procedures employed, and the defendant's prior relationship and

dealings with the Victim and the Renter.  Without raising such disputed facts, the defendant is

not entitled to a hearing.  This case thus does not present "peculiar problems" requiring deviation

from the normal practice of allowing the jury to evaluate the reliability of identification

evidence.  *Watkins* v. *Sowders*, 449 U.S. at 347; *see, e.g.*, *United States* v. *Salomon-Mendez*, 992

F. Supp. 2d. 340, 343-44 (S.D.N.Y 2014) (denying hearing based in part on uncontroverted

Government proffer of indicia of reliability).

      At trial, the Government will lay a foundation for the introduction of the Victim's and the

Renter's identifications, and the defendant will then be free to cross-examine both witnesses.  To

conduct a hearing where the defendant has not raised any disputed facts concerning the Victim's

or the Renter's anticipated in-court identification would only afford the defendant discovery to

which he is not entitled.  Because the defendant's right to challenge the identification will be

adequately protected by cross-examination and *voir dire* at trial, the Court should exercise its discretion to deny his request for a pretrial hearing.  *See United States* v. *Finley*, 245 F.3d 199, 203 (2d Cir. 2001) (Court of Appeals reviews "decision not to hold [*Wade*] hearing for abuse of discretion").[3]

## IV.   Conclusion

For the forgoing reasons, the defendant's motion should be denied without a hearing.

Dated: New York, New York
      June 25, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the Southern District of New York

By:      _____/s/_____
         Lauren Schorr
         Assistant United States Attorney
         Tel.: (212) 637-2299

---

[3] If at trial the Court were to find an independently reliable basis for the identification lacking, then the Court could conduct *voir dire* out of the presence of the jury to determine whether the pretrial identification was suggestive and whether it would impermissibly taint any in-Court identification.  If, however, the Court concludes that a pretrial hearing is proper, the Government requests that the Court conduct the hearing immediately before trial, to avoid requiring disclosure of Witness-1's identity at an unnecessarily early stage.

17