UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSHUA SOSA,<br>    a/k/a "Sos,"<br>    a/k/a "Sos the Ghost,"<br><br>                                     Defendant. | Index. No. 17 Cr. 580 (NRB) |

**DEFENDANT JOSHUA SOSA REPLY MEMORANDUM OF LAW IN**
<u>**SUPPORT OF MOTION TO SUPPRESS**</u>

Rita M. Glavin
Andrew S. Jacobson
One Battery Park Plaza
New York, New York 10004
Tel: (212) 574-1200
Fax: (212) 480-8421
*Attorneys for Defendant Joshua Sosa*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    A.    The Identification Procedures Were Unduly Suggestive ........................................ 3

    B.    Government Provides No Support for Independent Reliability Argument ........... 6

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page**

Cases

Manson v. Brathwaite,
   432 U.S. 98 (1977) ............................................................................................................. 5, 7

Mysholowsky v. New York,
   535 F.2d 194 (2d Cir. 1976) .................................................................................................... 3

Neil v. Biggers,
   409 U.S. 188 (1972) ................................................................................................................ 3

United States v. Ahmad,
   992 F. Supp. 682 (S.D.N.Y. 1998) .......................................................................................... 6

United States v. Brathwaite,
   No. 17 Cr. 0045, 2018 U.S. Dist. LEXIS 63767 (E.D.N.Y. Mar. 27, 2018) ........................... 7

United States v. Camacho,
   No. 04 Cr. 637(JMA), 2005 U.S. Dist. LEXIS 33171 (E.D.N.Y. June 3, 2005) ..................... 7

United States v. Estupinan-Jamarillo,
   No. 08 Cr. 320, 2009 U.S. Dist. LEXIS 88107 (S.D.N.Y. Sep. 23, 2009) .............................. 6

United States v. Finley,
   245 F.3d 199 (2d Cir. 2001) .................................................................................................... 7

United States v. Gillette,
   383 F.2d 843 (2d Cir. 1967) .................................................................................................... 6

United States ex rel. John v. Casscles,
   489 F.2d 20 (2d Cir. 1973) ...................................................................................................... 4

United States v. Keith,
   183 F. Supp. 3d 427 (S.D.N.Y. 2016) ..................................................................................... 4

United States v. Lumpkin,
   192 F.3d 280 (2d Cir. 1999) .................................................................................................... 3

United States v. Maldonado-Rivera,
   922 F.2d 934 (2d Cir. 1990) .................................................................................................... 5

United States v. Perez,
   No. 01 Cr. 848, 2003 U.S. Dist. LEXIS 2666 (S.D.N.Y. Feb. 27, 2003) ................................ 4

-iii-

United States v. Reed,
 No. 11 Cr. 487, 2012 U.S. Dist. LEXIS 79552 (S.D.N.Y. June 5, 2012) .................................. 3

United States v. Rodriguez,
 No. 00 Cr. 949, 2002 U.S. Dist. LEXIS 3259 (S.D.N.Y. Feb. 26, 2002) .................................. 6

United States v. Romero,
 97 Cr. 650 (LMM), 1998 U.S. Dist. LEXIS 17725 (S.D.N.Y. Nov. 9, 1998) .......................... 6

United States v. Wilson,
 493 F. Supp. 2d 469 (E.D.N.Y. 2006) ...................................................................................... 7

Wiggins v. Greiner,
 132 F. App'x 861 (2d Cir. 2005) ......................................................................................... 3, 5

**PRELIMINARY STATEMENT**

The defendant, Joshua Sosa, has made a threshold showing that the two identification procedures at issue on this motion to suppress are unduly suggestive, and therefore, the Court should either rule on this suppression motion in the defendant's favor, or alternatively, hold a pre-trial evidentiary hearing to resolve factual issues surrounding the identifications and the alleged events leading up to the identifications.

The defendant's Memorandum of Law in support of his Motion to Suppress (the "Motion to Suppress") set forth a number of critical facts demonstrating that the identification procedures performed for the victim of the alleged drive-by shooting ("Victim") and an individual who rented a white vehicle (the "Renter") allegedly associated with the shooting, were unduly suggestive and therefore required suppression. First, the defendant argued, and the Government has acknowledged, that both identification procedures at issue involved the use of a single photograph of the defendant. As discussed in the defendant's Motion to Suppress, the Second Circuit routinely condemns single photograph identification procedures as unduly suggestive because they often taint the reliability of a witness's identification in and out-of-court. Second, NYPD reports reflect, and the Government has acknowledged, that the Victim stated he did not know the identity of the alleged shooter when initially interviewed by police shortly after the shooting. Third, there were no exigent circumstances that might otherwise justify the New York City Police Department's ("NYPD") use of the single photograph. The Government has not contested the defense's assertion that the NYPD had more than enough time to collect additional photographs to perform constitutionally proper identification procedures. The Government has essentially conceded the grounds for a threshold showing of suggestiveness.

Given these facts, the Government now asserts that, "based on the totality of the circumstances," the identifications at issue were simply confirmatory and therefore the Court

1

should overlook the suggestiveness of the identification procedures. However, the Government relies entirely upon incomplete and amorphous hearsay statements as the basis for its independent reliability/confirmatory identification arguments. The Government has provided no affidavits from *anyone* with personal knowledge of either (a) the identification procedures, or (b) the events that allegedly led up to the single photograph identification procedure.

For example, the Government relies on Defendant's Exhibit 4, which is an NYPD report entry that refers to double hearsay statements regarding what an NYPD officer supposedly heard while "guarding" the Victim at the hospital. The report, which is a two-sentence summary of a purported interaction with the Victim, is void of any meaningful detail and raises serious questions regarding the accuracy, content and context of the alleged statements, including: whether the officer was interrogating the Victim; what the officer said to the Victim and what the victim said in response; the Victim's purported reference to a "silver car" when the vehicle allegedly used in the shooting was white; who the "Sosa from Jefferson" referred to (e.g., the shooter, driver, passenger, someone else involved, someone the Victim thought may have been behind the actions of the shooter). Notably, this brief NYPD report entry was written: (i) by an officer who did not hear the statements firsthand and is simply reporting what another officer purportedly told him; (ii) a day after the alleged statements were overheard; and (iii) after the Victim and Renter had purportedly identified the defendant. The Government's reliance on vague hearsay police reports, and not sworn affidavits by individuals with personal knowledge, raises serious issues of fact regarding the Government's argument that the unduly suggestive single photograph identification procedure was merely a "confirmatory identification" that is independently reliable "based on the totality of the circumstances." Whether this identification is independently reliable under the totality of the circumstances can only be resolved at a pre-trial

evidentiary hearing with testimony from the individuals with actual personal knowledge of the circumstances leading up to and surrounding both identification circumstances.

Accordingly, absent granting the defendant's motion to suppress on the papers given the unduly suggestive nature of the single-photograph identification procedure, the Court should hold an evidentiary hearing to assess the Government's independent reliability/confirmatory identification arguments after hearing directly from those with personal knowledge regarding the critical facts surrounding these identifications.[1]  Testimony from such witnesses is essential to evaluating the factors enumerated in Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

## ARGUMENT

### A. The Identification Procedures Were Unduly Suggestive

The defense has set forth facts demonstrating that the NYPD's use of single photograph identification procedures for the Victim and the Renter was unduly suggestive.  As discussed in the Motion to Suppress, single photograph arrays are consistently condemned as unduly suggestive in the Second Circuit given the likelihood of irreparable misidentification.  See, e.g., Wiggins v. Greiner, 132 F. App'x 861, 865 (2d Cir. 2005) ("[T]his court has 'consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one.'") (quoting Mysholowsky v. New York, 535 F.2d 194, 197 (2d Cir. 1976)); United States v. Lumpkin, 192 F.3d 280, 288 (2d Cir. 1999) (holding that single photo identification procedure was unduly suggestive); United States v. Reed, No. 11 Cr. 487 (RJS), 2012 U.S. Dist. LEXIS 79552, at *13-14 (S.D.N.Y. June 5, 2012) (holding that single photo arrays of defendant shown to eyewitness

---

[1] The Government argues in its Opposition Motion that any pre-trial evidentiary hearing should occur immediately before trial, to avoid disclosing "Witness-1's identity at an unnecessarily early stage." See Opposition Brief at 17.  It is not clear to whom the Government is referring to as Witness-1.  Nonetheless, given the importance of this suppression motion to the defense, the due process rights at issue, and its obvious impact on the defense's trial strategy, any such hearing should be conducted as soon as possible to give the defense adequate time to prepare for trial.

3

were improperly suggestive); United States v. Perez, No. 01 Cr. 848 (SWK), 2003 U.S. Dist. LEXIS 2666, at *12 (S.D.N.Y. Feb. 27, 2003) (holding single photo array to be unduly suggestive).  Single photo arrays are unduly suggestive because they raise the "necessary suggestion" that the individual depicted in the photograph was the perpetrator.  See United States v. Keith, 183 F. Supp. 3d 427, 433 (S.D.N.Y. 2016) (quoting United States ex rel. John v. Casscles, 489 F.2d 20, 25 n.5 (2d Cir. 1973)).

     In its Opposition Brief, the Government acknowledges that the NYPD used a single photograph to perform identification procedures for the Victim and the Renter.  Opposition Brief at 7.  The Government has not identified any exigent circumstances justifying the use of the single photograph and has not disputed the defense's claim that the NYPD had more than enough time to procure additional photographs in order to perform constitutionally proper identification procedures.  Moreover, the Government has not disputed the defense's assertion that the NYPD should have shown the Victim a separate photographic lineup that included the Renter, since he was the person who rented the white car that was allegedly used in the shooting and should have reasonably been considered a suspect at the time.

     In addition, the NYPD failed to present the Renter or the Victim with photographs of *any other* individuals to corroborate their identifications.  The police should have conducted more thorough and constitutionally proper identification procedures given the Renter's initial statement that the white vehicle allegedly used in the shooting was stolen, which he later allegedly retracted, and the Victim's initial statement to police that the shooter was an unknown Hispanic male.

     The Government argues that the two identification procedures were just "confirmatory" in nature and therefore there was "no risk that using a single photograph would be suggestive."

4

Opposition Brief at 7.  The Government is wrong.  Neither the Victim nor the Renter formally identified the defendant prior to the unduly suggestive identification procedures.  The Renter allegedly described the person for whom he rented the car as "Sos," without additional personal identifying information such as race, age, hair color, height, weight, etc.  Ex. 5.  Similarly, the Victim initially purportedly said the shooter was an unknown Hispanic male, and then later allegedly referred to a "Sosa from Jefferson" while at the hospital (without specification on precisely what "Sosa from Jefferson" purportedly did, e.g., shooter, driver, passenger, someone the Victim thought might have induced the shooter's actions) in an ambiguous conversation with an NYPD officer.[2]  It is unclear from the NYPD report entry describing that hospital conversation—*which was written by an NYPD officer[3] with no personal knowledge of the alleged underlying conversation the day after the Victim's identification at issue*—whether the Victim was referring to the actual shooter with that statement.  The Government relies entirely on that alleged conversation with the Victim to justify the unduly suggestive single photograph procedure at the hospital on the evening of July 21.  In short, the first time the Renter or the

---

[2] In its Opposition Brief, the Government argues that the defense's claim that the Victim was initially unable to identify the shooter to police goes to the "weight, not admissibility, of the identification and is subject to cross-examination."  Opposition Brief at n.2.  The opposite is true.  The Victim's inability to initially identify the shooter, especially given the alleged close range of the shooting and the alleged history between the Victim and the defendant, goes to the *reliability* of the witness's identification and the suggestiveness of the identification procedure.  Since there is strong evidence as to the suggestiveness of the single-photo identification procedure, the Victim's inability to initially identify the shooter must be considered when evaluating the admissibility, not weight, of the identification.  See, e.g., Wiggins v. Greiner, 132 F. App'x 861, 864 (2d Cir. 2005) ("Supreme Court precedent clearly identifies 'reliability' as the 'linchpin in determining the admissibility of identification testimony.'") (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)); United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990) ("When a witness has made a pretrial identification, the analysis of whether he is to be permitted to identify the defendant at trial normally requires a one-step or two-step inquiry.  The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt.  If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification.  In that circumstance, any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility.").

5

Victim identified the defendant was when the NYPD presented each of them with the single mugshot photograph of the defendant.

### B. Government Provides No Support for Independent Reliability Argument

To obtain a pre-trial evidentiary hearing regarding the reliability of in and out-of-court identifications, the defendant is simply required to make a threshold demonstration of suggestiveness. See, e.g., United States v. Estupinan-Jamarillo, No. 08 Cr. 320 (JFK), 2009 U.S. Dist. LEXIS 88107, at *7 (S.D.N.Y. Sep. 23, 2009). An evidentiary hearing on motions to suppress identification procedures is advisable where there is a showing that the pre-trial identification was the result of impermissibly suggestive procedures. See United States v. Rodriguez, No. 00 Cr. 949 (DAB), 2002 U.S. Dist. LEXIS 3259, at *10 (S.D.N.Y. Feb. 26, 2002) (explaining that a "threshold showing" of suggestiveness is necessary in order to trigger a Wade hearing).

In moving to suppress a pre-trial identification procedure, a criminal defendant is not required to submit an affidavit to obtain an evidentiary hearing.[4] See United States v. Romero, 97 Cr. 650 (LMM), 1998 U.S. Dist. LEXIS 17725, at *13-14 (S.D.N.Y. Nov. 9, 1998). In cases involving eyewitness identifications involving the use of photographs, the defendant will typically not have personal knowledge regarding the circumstances of the identification procedure, thus making it unfeasible to submit an affidavit asserting facts to which he or she does not have personal knowledge. See Romero, 1998 U.S. Dist. LEXIS 17725, at *13-14 (in granting defendant's request for evidentiary hearing on motion to suppress two cooperating

---

[3] NYPD Officer Fazio purportedly had the conversation with the Victim on July 21, 2017, and Detective Patrick Purcell is the author of that July 22, 2017 NYPD report purportedly summarizing what Officer Fazio told him about his conversation with the Victim.

[4] The cases that the Government cited in support of the proposition that a defendant affidavit is required to obtain a pre-trial evidentiary hearing did not involve eyewitness identification procedures, but rather, factual circumstances that a defendant would have personal knowledge of. See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) (defendant moved to suppress proceeds of a search); United States v. Ahmad, 992 F. Supp. 682, 684 (S.D.N.Y. 1998) (defendant moved to suppress custodial statements made).

witnesses' pre-trial identifications, the Court concluded that the absence of an affidavit on the part of the defendant was not "necessary" because the government and two cooperating witnesses, and *not defendant*, were "in possession of the significant facts: what transpired between the persons who showed the photo array to CW-1 and CW-2 . . . .") (emphasis added). That is the case here.

Moreover, once the defendant makes a threshold demonstration that the identification procedure was unduly suggestive, the burden shifts to the Government to prove that the in-court identification will not be unduly tainted by the suggestive identification procedure based on the totality of the circumstances. See United States v. Wilson, 493 F. Supp. 2d 469, 474-75 (E.D.N.Y. 2006) (explaining that "[w]here a photographic identification procedure is so suggestive as to lead to a substantial likelihood of irreparable misidentification, the Government bears the burden of proving that the in-court identification will not be unduly tainted by the suggestive array based on the totality of the circumstances."); United States v. Camacho, No. 04 Cr. 637 (ERK) (JMA), 2005 U.S. Dist. LEXIS 33171, at *25 (E.D.N.Y. June 3, 2005) (same proposition) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).

In these circumstances, the Government will typically submit affidavits sufficient to establish the circumstances under which the identification was made and establish the reliability of the identification itself. See United States v. Finley, 245 F.3d 199, 204 (2d Cir. 2001) (upholding district court's decision that the government's affidavit was sufficient to establish the circumstances under which the identification was made and contained enough facts to establish the reliability of the identification); United States v. Brathwaite, No. 17 Cr. 0045 (SJ), 2018 U.S. Dist. LEXIS 63767, at *18 (E.D.N.Y. Mar. 27, 2018) (holding that the government established

that the identifications were independently reliable, where the government submitted affidavits of the special agent detailing the circumstances of the identification procedure).

Notably, on its opposition to the motion to suppress, the Government has not submitted factual affidavits from *any individuals* with personal knowledge of the identification procedures and circumstances leading up to them. The Government relies on ambiguous hearsay (and double hearsay) statements contained in NYPD reports in support of its assertion that the identifications were simply confirmatory and independently reliable under the totality of the circumstances. Specifically, the Government cites two police reports – Defense Exhibits 4 and 5 – in support of its claim that the identification procedures were proper. See Exs. 4 and 5; Opposition Brief at 6. Both exhibits contain hearsay and are ambiguous, raising more questions about the unduly suggestive identification procedures.

Exhibit 4, an NYPD report written on July 22, 2017, details statements that the Victim allegedly made at the hospital at around 3:30 p.m. on July 21, 2017, almost four hours after the shooting. That report provides:

> On July 21, 2017 at approximately 1530 hrs undersigned interview [sic] PO Fazio Shield #[XXXX] from PSA5 at Harlem Hospital. PO Fazio was guarding the [Victim] at the hospital. PO Fazio stated [Victim] was talking and stated that it was a male Hispanic wearing black shorts, white t-shirt, silver car. [Victim] told [Officer Fazio] car came up and starting [sic] shooting said it was Sosa from Jefferson.

Ex. 4 at JS_004766.[5]  From this entry, written by Detective Purcell on July 22 about purported events on July 21, much is unclear, including: whether Officer Fazio was interrogating the Victim; why the Victim purportedly referenced a silver vehicle when the vehicle allegedly used

---

[5] Notably, this police report entry was prepared by a police officer who did not directly hear the statements, a day after the statements were allegedly made, and after the Victim and Renter had identified the defendant. Ex. 4 at JS_004765.

8

in the shooting was white; who exactly "Sosa from Jefferson" refers to (e.g., the shooter, driver, passenger, someone else that the Victim thought could be involved, etc.); whether the alleged statements were made under the influence of medication; and whether Officer Fazio suggested or referenced – directly or indirectly – the defendant prior to the Victim making any statement about a "Sosa," among others. The report is as unclear as it is incomplete regarding Officer Fazio's alleged conversation with the Victim.

Exhibit 5 raises similar questions, including what caused the Renter to "[change] his story;" what the NYPD said to him and what he actually said to them; what factors caused the NYPD to select the defendant's photograph; and what NYPD databases were searched to that effect.

In short, by relying on hearsay (and double hearsay) that is unclear and incomplete, the Government has not met its burden of establishing independent reliability "under the totality of the circumstances" of the unduly suggestive single photograph identification procedures. Given that defendant was not present for the identifications, he cannot be expected to have personal knowledge regarding the circumstances surrounding those procedures.[6] Indeed, the Victim and the Renter are cooperators within the Government's control.

---

[6] In its Opposition Brief, the Government asserts that the defendant "acknowledges, without dispute, that the Victim has stated that he knew the defendant for some period of time before the Shooting" and that the "defendant simply ignores the past relationship between the Renter and the defendant." Opposition Brief at 13-14. The defense does not concede either point. Indeed, the Government has provided no affidavits from either the Renter or the Victim regarding the defendant, the shooting, or the identifications at issue. The Government relies on hearsay that is incomplete and unclear when it comes what the Victim and the Renter have purportedly said.

9

**CONCLUSION**

For the foregoing reasons, Mr. Sosa respectfully requests that the Court suppress any and all evidence obtained from the Victim's and Renter's July 21, 2017 identification of Mr. Sosa as the alleged shooter, and all evidence derived from those identifications.

New York, New York
July 19, 2018

                                                        Respectfully submitted,

                                                        SEWARD & KISSEL LLP

                                                        By: __/s Rita M. Glavin_____
                                                              Rita M. Glavin
                                                              Andrew S. Jacobson

                                                        One Battery Park Plaza
                                                        New York, New York 10004
                                                        Tel: (212) 574-1200
                                                        Fax: (212) 480-8421
                                                        *Attorneys for Defendant Joshua Sosa*